In the Matter of EDWARD HERRMANN, an Attorney, Respondent.

First Department, December 1, 1916.

Attorney at law disbarred — participating in scheme to procure divorce for client — making false claim to moneys of client — doctrine of reasonable doubt not applicable.

Attorney at law disbarred for participating in a scheme in pursuance of which his client was induced to go to a room in a hotel in an adjoining State with a woman other than his wife, where he was found by detectives, and as a result of which his wife procured a divorce, and also for delaying the repayment of money to his client by setting up a false claim thereto.

The doctrine of reasonable doubt has no place in a proceeding to discipline an attorney at law. The questions involved are to be determined upon the fair preponderance of the evidence and the reasonable inferences to be drawn therefrom, and not beyond a reasonable doubt.

DISCIPLINARY PROCEEDINGS brought by the Association of the Bar of the City of New York.

*Einar Chrystie* [*Joseph M. Hartfield* of counsel], for the petitioner.

*George D. Zahm* [*Burt D. Whedon* of counsel], for the respondent.

CLARKE, P. J.:

The respondent was admitted to the bar in July, 1897.

The petition charges that in June, 1909, a separation agreement was entered into between Finn L. Fossume and his wife, Anna Thrane Fossume, the respondent acting as attorney for the husband. In the fall of 1909 the respondent told Fossume that Fossume ought to have an absolute divorce; that Mrs. Fossume was agreeable to it and that the respondent would arrange the divorce without any publicity and procure it within six months for $2,500, which would include all expenses. In October, 1909, Fossume accepted the offer and authorized the respondent to procure the divorce. The respondent paid to himself as his agreed fee the sum of $2,500 out of moneys in his hands belonging to Fossume.

In January, 1910, the respondent procured Fossume to go to a bedroom in a hotel in Hoboken with a woman named Helen Rowe. While they were there detectives, acting under orders from the respondent, opened the door and found them there. Respondent thereafter reported to Fossume that he had paid one of the detectives named Aschner $250 for his services in the matter, and falsely represented to Fossume that the action for divorce had been begun and was pending. In fact no suit for divorce had been brought by or against Fossume.

In July, 1910, the respondent told Fossume it would be dangerous to press the divorce case, whereupon Fossume demanded of the respondent the return of the $2,500. Respondent refused to return it, and in October, 1910, Fossume commenced an action in the Supreme Court to recover the money, and in June, 1912, the action was settled by the payment of $1,500 by the respondent to Fossume.

First Department, December, 1916.          [Vol. 175.

The respondent's answer practically amounts to a general denial.

The learned official referee to whom the charges were sent for investigation has reported that "upon this branch of the case the respondent is entitled to the benefit of a reasonable doubt and that the charge against him that he participated in the scheme in pursuance of which Dr. Fossume was induced to go to a room in a hotel in Hoboken with Helen Rowe, has not been sufficiently established," but that the respondent was guilty of unprofessional conduct in refusing to return to Fossume the said $2,500 less disbursements actually incurred and a reasonable charge for services actually rendered and not yet paid for, if any there were, and in delaying the repayment by the false claim that the said sum was given not as a fee for the purpose of obtaining a divorce, but as a retaining fee on account of his client's matrimonial matters in general.   As to the first finding this is in no sense a criminal proceeding. (*Matter of Randel*, 158 N. Y. 216; *Matter of Spenser*, 143 App. Div. 229; affd., 203 N. Y. 613.)   The doctrine of reasonable doubt has no place herein.   The questions involved are to be determined upon the fair preponderance of the evidence and the reasonable inferences to be drawn therefrom, and not beyond a reasonable doubt.   With that rule in mind we examine the facts as proved.

Dr. Fossume is a surgeon dentist.   He and the respondent had been friends for many years and the respondent had done much legal work for Fossume.   Throughout the correspondence in evidence the respondent addressed Fossume as "Dear Doc" and Fossume addressed the respondent as "Dear Ed." He loaned him money on various occasions and at some time prior to June, 1905, Fossume delivered to the respondent $5,000 which respondent was to invest in some work to be done on the canal in which respondent was interested.   Respondent told him that he would double his money and he would guarantee him repayment.   The enterprise did not succeed and respondent by way of repaying the money to Fossume credited Fossume's account with him to that amount.

Fossume's wife, referred to in the testimony as Dr. Thrane, was also a dentist.   Prior to July, 1909, Fossume and his wife

each suspected the other of infidelity and were on bad terms. Dr. Fossume desired .the respondent to bring an action for divorce on his behalf, but no such action was ever brought, but some time in 1909 an action for separation was brought by Mrs. Fossume, and on July 10, 1909, an agreement of separation between them was made by which Mrs. Fossume received a certain amount down and Dr. Fossume agreed to pay her $100 a month for three years. Fossume testified that in the latter part of August, 1909, the respondent asked him " if he would not be willing to grant his wife a divorce, he thought she. ought to have it, and I said I would do so, I would not oppose a decree and he said it would cost $2,500, that he would pay all the expenses if I would agree to pay him that sum. * * * I objected to the sum of $2,500, because I did not feel that I could afford it, and he told me that it would be necessary to keep the matter quiet so as not to injure my professional standing, and this I thought quite reasonable." He further testified that respondent said he would procure a divorce for his wife in about six months. " In six months or in due time Mr. Herrmann said he would send a woman up to my office and I should go over to New Jersey with her, because it is a criminal offense to give such evidence in New York State." Fossume said that after several conversations he consented to pay respondent $2,500.

That there was some agreement between the parties which was concluded prior to September 15, 1909, is clear from respondent's letter of that date to Fossume in which he wrote: "In regard to the $2,500 there is no occasion for you at all to spend this money if you do not want to. The first chance I get I want to see you personally about this proposition. However, that is a long story. Personally I prefer not to go ahead with it."

On October 3, 1909, Fossume wrote the respondent: " I have given my matrimonial situation quite some thought of late and I have come to the conclusion that I will not oppose my wife obtaining a decree of divorce against me, but I shall look to you to protect me absolutely against any publicity or course of action that will harm me socially or professionally. Your fee must not exceed in any event $2,500. And I also want you to

know that at present I cannot pay you any money as I have none and you would have to finance this indebtedness for some time until I can reimburse you." Whether this letter was written at the respondent's dictation, as testified by Fossume, or merely at the respondent's suggestion, it clearly indicates that the services for which the respondent was to receive the said $2,500 from Fossume were to be rendered in an action which was to be prosecuted, not by Fossume, but by his wife.

Fossume testified that he subsequently received a telephone call from the respondent advising him that a woman would call upon him and instructing him to make arrangements to go to New Jersey with her. He asserts that shortly after this telephone conversation, a woman named Helen Rowe called at his office and told him that the respondent had sent her to him, whereupon they arranged to meet on a certain evening and proceed to a hotel in Hoboken, where they were to be discovered in a compromising situation by detectives employed by the respondent. Fossume's testimony as to this woman's calling at his office was corroborated by that of his office assistant, one Elizabeth Becker, who testified that in January, 1910, a woman called at Fossume's office and stated that she had been sent there by the respondent, at the same time presenting one of the respondent's business cards on which was written in respondent's handwriting, "Introducing Miss Rowe to Dr. Fossume."

It is undisputed that on an evening in January, 1910, Fossume met Miss Rowe and after dining with her at a New York restaurant went with her to Hoboken, N. J., where they were found by detectives and others in a room in a hotel under circumstances raising an implication of adultery between them.

Fossume testified that he told the respondent after he came back from Hoboken exactly what had happened and that he had told on the stand, and respondent said he would go ahead and start an action for divorce.

The testimony of Aschner, the detective under whose guidance Fossume and Miss Rowe were followed to the hotel in Hoboken, is, as pointed out by the learned referee, most unsatisfactory, and calls for careful scrutiny. Aschner testified that he first learned of the differences between Fossume

and his wife some time prior to January, 1910, when he overheard a conversation in respondent's office from which he gathered that Mrs. Fossume wanted a divorce. He claims to have then asked the respondent if there was any chance of getting any work on the case, to which the respondent replied that he did not know. He testified that he subsequently, by mere chance, saw Mrs. Fossume's (Dr. Thrane's) name on the outside of a house, and having a toothache, went to her for treatment. He then told her that he was a detective, and she later engaged him to shadow her husband, paying him in all $250. Aschner further testified that when in the respondent's office about two weeks after his employment by Mrs. Fossume, he told the respondent of his engagement by her, to which the respondent replied, "If you are successful in that I have been authorized to give you $200 and now get out and hustle." While testifying before the grievance committee of the Bar Association, Aschner said that Mrs. Fossume told him that the respondent had done some work for her, but before the referee he denied that she made any mention to him of the identity of her attorney. He testified, however, that the respondent did not tell him the source of his (the respondent's) authority to pay him the $200 but he got the impression that the respondent was Mrs. Fossume's attorney.

According to Aschner, he sent Miss Rowe to the respondent on the respondent's request that he be sent a girl to do some work, not specifying the nature of the same. Before the grievance committee, however, Aschner stated that he was sure the respondent did not know Miss Rowe.

Coming down to the night of the Hoboken affair, Fossume testified that he telephoned the respondent from a booth in a restaurant telling the respondent that he had the woman with him and being advised by the respondent that everything was all right and to go ahead. Aschner testified that he was notified by one of his operators that Fossume was at a hotel with a woman and that he immediately notified Mrs. Fossume, and with Dr. Price, a friend of Mrs. Fossume's, and an operator, he followed Fossume and Miss Rowe to Hoboken and found them in a compromising situation in a room in a hotel in that city. The respondent denied ever having had the conversation with

First Department, December, 1916.     [Vol. 175.

Aschner relative to the $200 payment, as testified by him; that he ever requested Aschner to send him a woman operator, or ever heard of the Rowe woman or of the Hoboken incident until told of it by Fossume after it had occurred. He ascribed his first knowledge of the incident to a telephone conversation with Fossume some days afterwards, and Fossume told him that Mrs. Fossume had got him and that Aschner had fixed up the whole thing. He admits a subsequent conversation with Fossume relative to the Hoboken affair, and claims that he then told Fossume that he was through with the case and would have nothing more to do with it.

It was established on the hearing that Aschner had performed services for the respondent on a previous occasion, and that the respondent had likewise acted as attorney for Aschner in several matters. It also appears that subsequent to the Hoboken affair the respondent gave Aschner two checks, for $100 and $25 respectively, the stub of the $25 check reading, " Cash re Fossume for detective work." In addition to these checks, Fossume received from the respondent a check for $100 upon which was written, "For bill of Aschner." In respect to these payments, Aschner testified that after the Hoboken incident, he asked the respondent to pay him the $200 as agreed, stating that he needed the money to pay a dental bill to Fossume for professional services performed for himself and wife. He testified that the respondent kept out $50 in which amount he was indebted to the respondent for legal services, paid him $50 in cash, and offered to pay Fossume $100 in payment of Aschner's dental bill.

According to the respondent about three months prior to January, 1910, Fossume complained to him that he was being shadowed about the Suydenham Building, and the respondent sent Aschner to ascertain whether this was true. The respondent testified that Fossume subsequently told him that he had engaged Aschner to shadow Mrs. Fossume, and agreed to pay him $200 or $250. The respondent further testified that Aschner reported to him that he had observed Fossume go to the room of his assistant, Miss Becker, with fruit, and that he had advised Fossume to have a male employee who should remain in his office at all times, which advice Fossume followed. Fos-

sume admits that he did employ such male employee on the advice of the respondent. While the respondent, at one point, denied that he ever discussed the Hoboken incident with Aschner, he later testified that Aschner told him that the affair was arranged between Fossume and him, and that he (the respondent) upbraided Aschner for taking money from Fossume as well as Mrs. Fossume, and doing the whole thing behind his back. Aschner and Fossume both denied that Aschner had done any work for the latter, or that Fossume had agreed to pay Aschner anything.

Mrs. Fossume corroborated Aschner's testimony as to his employment by her, and she strenuously asserted her ignorance of any collusion in the affair at Hoboken, and denied that she ever employed or acted in concert with the respondent in the matter.

The respondent's testimony to the effect that he informed Fossume that he would have nothing to do with the divorce matter, at least so far as the Hoboken affair was concerned, is inconsistent with the correspondence between the parties.

On January 18, 1910, the respondent wrote Fossume: " As regards the five thousand dollars, my books show this amount, and I have also made up an account which I send you herewith, except that I have not filled out the amount of my fees in Holden v. Fossume and Fossume v. Fossume, which I have not up to the present been able to make up my mind about, but will after I have a talk with you. The inclosed statement, however, will serve for your guidance, and be a record in the event of anything happening to either you or myself."

In the inclosed statement were the following items:

" Services rendered Fossume v. Fossume ...... . Services to be rendered Fossume v. Fossume as agreed $2,500.00."

There was further correspondence about the $5,000, and on May 18, 1910, respondent again inclosed a corrected statement showing a balance in favor of Fossume of $119.12, for which he inclosed a check. In that statement appeared these items:

" Services rendered, Fossume v. Fossume, $1,250."

It is agreed by all parties that this was the charge for the separation suit.

"Services to be rendered, Fossume v. Fossume, as agreed $2,500."

On May thirteenth Fossume acknowledged the receipt of the letter and statement by letter:

"I have looked over your statement and the only comment I wish to make is on the charge of $1,250 in Fossume v. Fossume as this seems high. I also might ask if it is customary for you to require payment in advance as in the $2,500 charge for Fossume v. Fossume as agreed, or is it because you have my money and feel that you may as well keep it. As yet I have not received any value for this payment."

In answer to this the respondent wrote on May 14, 1910: "In answer to yours of May 13th, I should be very pleased to have any reputable lawyer determine whether the $1,250 is not more than a reasonable compensation for the work I did in the Fossume v. Fossume matter up to the time of settlement. * * * In regard to the other fee, this includes my finishing the matter up completely, and a good part of the charge has already been paid out by me in cash. As far as retainers are concerned, you have been spoilt. It is customary for lawyers to receive retainers in all matters before the services are rendered."

In a letter dated June 24, 1910, to the respondent Fossume wrote: "When you urged me to make the agreement with you for the $2,500 you promised that I would be free in six months. I surely did my part over in Hoboken. Please favor me with full information immediately and don't wait two or three weeks, as is your custom with me."

On July second he again wrote to the respondent: "Be good enough to send me an adequate reply to my letter of last week."

On July fifth the respondent wrote to Fossume: "In answer to your last letter, nothing can be done owing to the fact that Dr. Thrane has gone to Europe, and as far as your pushing the divorce matter is concerned, I think you ought to be glad to let the matter alone. There is a great deal of danger in pushing the divorce matter at this time. As I have previously notified you, the lady is not contented with her allowance of alimony. My advice at present is to leave the matter rest."

At that time there was no divorce action pending.

The failure of the respondent to make any mention of the Hoboken incident is significant. It is likewise significant that in a letter to Fossume dated May 14, 1910, the respondent stated " this (the $2,500) includes my finishing the matter up completely, and a good part of the charge has already been paid out by me in cash; " whereas, so far as appears, the only money disbursed by the respondent in the matter was the payment to Aschner. When confronted with this statement in his letter of May fourteenth, the respondent was unable to make any satisfactory explanation of the same. In the light of the correspondence between Fossume and the respondent, the latter's claim that he was to receive $2,500 from Fossume merely as a retainer for future services and advice in relation to his matrimonial matters is obviously false. The irresistible inference to be drawn from such correspondence is that the respondent, in return for that sum of money, was to procure a decree of divorce in favor of Mrs. Fossume. It is to be noted that Helen Rowe was not called as a witness by either party, nor does the record disclose any satisfactory reason why she was not called. In view of the testimony of Fossume, Miss Becker and Aschner, which, if true, established the respondent's guilt, any inference to be drawn from the failure of the parties to produce this witness must, I think, be resolved against the respondent, who apparently chose to stand upon his own denials. Upon the whole evidence, we are of opinion that the petitioner has established that the Hoboken affair was brought about with the respondent's knowledge and consent, if not by his arrangement, and that the first charge against the respondent has been sustained.

It is the fact, based upon the Hoboken event, Mrs. Fossume did commence a divorce action by another attorney and obtained a decree in her favor. It was in consequence of this that Fossume demanded the $2,500 from respondent for which he claimed no services had been rendered.

In respect to the second charge, it appears that some time prior to June, 1905, Fossume delivered to the respondent $5,000 with the understanding that the respondent should invest it in some work to be done on the canal by a company in which he was interested.

First Department, December, 1916.          [Vol. 175.

The canal enterprise, however, was a failure, and the respondent, in a statement inclosed in a letter to Fossume dated May 12, 1910, assumed the liability of paying Fossume the said $5,000, crediting Fossume with that sum as a loan. In this statement there likewise appears the charge "Services to be rendered, Fossume v. Fossume, as agreed, $2,500." As pointed out in the consideration of the first charge against the respondent, the respondent's only service in relation to divorce proceedings, for which Fossume was to pay the respondent this sum, were limited to the hiring of Aschner, and the only disbursements incurred were in paying Aschner $200 or $250. On October 1, 1910, Law, as attorney for Fossume, demanded the return of the $2,500, to which the respondent replied with his claim that the $2,500 was charged as a retainer in respect to Fossume's matrimonial work generally. The same claim was set up in the respondent's answer in an action commenced by Fossume to recover this money. On the eve of the trial of this action it was settled by respondent paying to Fossume $1,500.

As indicated above, the learned official referee has found that this claim of the respondent was false, and that in setting up such false claim in his refusal to pay a sum of money for which he was indebted to his client, the respondent was guilty of professional misconduct. With this conclusion we agree.

We are of opinion that the respondent has been guilty of such professional misconduct that he should not be permitted further to practice his profession.

He is, therefore, disbarred.

McLAUGHLIN, LAUGHLIN, SCOTT and PAGE, JJ., concurred.

Respondent disbarred. Order to be settled on notice.