1834.

Lansing
v.
Pine.

---

## LANSING vs. PINE.

The defendant is not bound to look beyond the copy of the bill which is served on his solicitor; and if that does not contain the requisite affidavit or verification to give the court jurisdiction of the case, he may demur to the bill on that ground.

Where the complainant had purchased the rent and reversion of an attainted person in a lot of land, and had received rent from the tenant for more than forty years, at a particular rate, and which had been paid in a particular manner; *Held,* that he was not entitled to a discovery from the tenant as to the amount of rent reserved by the orignal lease, or as to the terms of payment thereof.

The court of chancery will not aid a landlord in obtaining a discovery from his tenant, as to the existence of covenants in the lease by which the interest of the tenant in the land may have become forfeited.

Where a lessee of land becomes a purchaser of an undivided moiety of the rent and reversion, the lease and rent is merged and extinguished as to that portion of the premises; and he is not such a tenant in common, of the rent and reversion, with the owner of the other half thereof, as to entitle the latter to a partition of the land during the continuance of the lease.

If the owner of an undivided moiety of a lot of land is a lessee of the other half thereof, and the lease has become forfeited by the non-performance of a condition subsequent, the landlord must enter for the forfeiture, or must otherwise obtain the possession of his undivided half of the premises, before he can sustain a bill for partition.

THIS case came before the court upon a demurrer to the complainant's bill. The bill stated a purchase by the complainant, in January, 1788, from the commissioners of forfeitures, of an undivided half of the rent and reversion of lot No. 144 in Pittstown; supposed to have been forfeited by the attainder of Robert W. Leake. That the complainant, at the

October 21.

time of the purchase, was informed the lot was in lease, but that never having seen the lease, he could not set forth for what term the same was given, or what amount of rent was reserved thereon. That at the time of the purchase, or shortly thereafter, J. Pine, the ancestor of the defendant, was in possession of the whole lot, claiming the same under the lease, and also claiming to be the owner of the other half of the rent and reversion ; and that he represented to the complainant's agent that the one half of the rent, to which the complainant was entitled under the purchase from the commissioners of forfeitures, was twelve and a half bushels of wheat per annum. That the complainant received that amount of rent from J. Pine, from the time of his purchase, in 1788, till 1830 ; since which time the rent had not been paid. That Pine claimed that the rent was payable on the premises, or in Pittstown, only ; where the complainant had usually received it. That J. Pine died 3 or 4 years before the filing of the bill ; and that the defendant, his son, was in possession of the lot, claiming title thereto, by inheritance, devise or purchase, from or under him, or otherwise. The complainant further stated, in his bill, that not having seen the lease, or the counterpart thereof, he was unable to state with certainty the terms upon which it was given, the estate thereby created, the covenants or conditions therein contained, or the amount of rent reserved ; or whether the lease had expired or had become forfeited. But that he was informed and believed that the defendant had the lease, or a counterpart thereof, in his possession, and he prayed that the defendant might be compelled to produce the same. The complainant prayed for a discovery, of the contents of the lease, the term for which the same was given, the rent reserved, and the particular covenants, reservations and conditions therein contained, and the amount of rent due to him thereon ; and that a partition of the premises might be made between the complainant and the defendant, and such other persons as might appear to be interested therein, or for such other relief as the complainant might be entitled to, upon the facts of the case. In the demurrer to the bill, the defendant assigned, as causes of demurrer, 1. That the complainant had not made affidavit that

he had not the lease or the counterpart thereof in his custody or power.   2. That if the suggestions in the bill were true, a discovery of the contents of the lease might subject the defendant to a forfeiture of his estate ; and that such forfeiture was not waived by the bill.   3. That the claim for arrears of rent was properly cognizable at law only, and not in this court. 4. That the complainant was not entitled to partition ; as it appeared by his bill that he was only entitled to his present rent, and to a reversion in the half of the premises.   5. That there was no equity in the bill entitling the complainant to any relief in this court.   It was alleged, by the complainant's counsel, that the bill on file was verified in the usual form ; but there was no jurat to the copy furnished to the court, or to that which was served on the defendant's solicitor.

*C. Y. Lansing*, for the complainant.

*H. P. Hunt*, for the defendant.

THE CHANCELLOR.   The defendant was not bound to look beyond the copy of the bill served on his solicitor ; and if that did not contain the necessary affidavit, or verification, to give the court jurisdiction, he had a right to demur to the bill on that ground.   Here the objection of the want of an affidavit is distinctly made by the demurrer.   The complainant, therefore, instead of noticing the demurrer for argument, should have examined the copy of the bill served on the defendant's solicitor, and should have made it conformable to the bill on file, if that contains the requisite verification.

Independent of this technical objection, I think there was not sufficient equity in the bill to entitle the complainant to the discovery and relief sought thereby.  It appears to be a mere fishing bill, for the purpose of ascertaining whether there may not be something in the original lease which will entitle the complainant to claim other and greater rights, in relation to this lot, than those which he has been exercising for nearly half a century.   Immediately after his purchase, in 1788, he commenced receiving rent from the defendant's father, as the

tenant of an undivided half of the lot, and who also claimed an absolute interest in the other half, at the rate of 12 bushels and a half of wheat, annually, payable on the premises, or in the town of Pittstown. And after receiving such rent for 42 years, the complainant now asks, from the defendant, a discovery as to the amount of rent originally reserved in the lease ; but without venturing an allegation in his bill that he even believes that a greater rent, than that which he has been receiving, was reserved, or stipulated to be paid. After such a lapse of time, even if it should appear that a greater rent was originally reserved, I am inclined to think the court, or a jury, would be bound to presume that the residue of such rent, beyond the twelve and a half bushels of wheat, had been released or extinguished, either by Leake before his attainder, or by the complainant subsequent to his purchase. The recovery of the rent, at the rate which has been paid by the defendant's father, certainly could not have been the inducement for filing this bill ; as the bill contains no allegation that the defendant has ever declined paying such rent, in the manner in which the complainant had previously been in the habit of receiving it. Neither was the amount due, at the time of the commencement of this suit, of sufficient value to enable the complainant to recover the same in this court. And as a partition suit, the bill cannot be sustained ; as there is no such tenancy in common between the complainant and the defendant as can entitle the former to a partition, during the continuance of the lease. If, as alleged in the bill, J. Pine, the father, was in possession, as a tenant under the lease, and became the owner of the rent and reversion as to one half of the premises, the tenancy as to that half was merged in the greater estate, and the rent as to that half was extinguished.

"  For if a great and less estate,
"  Without one intermediate,
"  In the same person coincide,
"  It is a kind of paricide ;
"  The great one sinks, or drowns the small,
"  Never again to rise at all."

(*Conv. Guide,* 64. 1 *Cruise's Dig. tit. Estate in Fee,* § 58. *Co. Litt.* 54, *b.*) It is true, the complainant alleges in his bill that

he has never seen the lease, and that therefore he cannot state the terms thereof, or whether the estate thereby created has expired or has been forfeited. But to sustain a bill for partition, on the ground that the complainant has become a tenant in common with the defendant, in the reversion, so as to entitle him to the immediate possession of one half of the lot, he should at least have alleged his belief that the one half of the premises had reverted to him by the termination of the estate created by the lease. And if the estate of the tenant has become forfeited, or is determined by the non-performance of a condition subsequent, the complainant must first recover the possession of his half of the premises by entry, or in an action at law, before he can sustain a bill for a partition of the lot. This court will not even aid him to obtain a discovery whether there are any covenants or conditions, contained in the lease, by which the estate of the lessee may have become forfeited.

The bill being defective both in form and substance, the demurrer is allowed; and the bill must be dismissed, with costs. The complainant having died since the argument, the decree must be entered *nunc pro tunc*.