In the Matter of the Charges of the Association of the Bar of the City of New York, Respondent, against William F. Randel, an Attorney, Appellant.

1. Attorney — Proceeding to Disbar — Effect of Failure to Testify. In a proceeding to disbar an attorney on charges of deceit and malpractice, his refusal to testify raises the legal presumption of the truth of such uncontradicted facts given in evidence against him as must have been known to him.

2. Not a Criminal Proceeding — Presumption. Such a proceeding to disbar an attorney is in no sense a criminal proceeding, and the statutory rule of no presumption in such cases does not apply.

3. Appeal — Evidence to Support Findings and Decision. Where the order of the Appellate Division disbarring an attorney does not show that the decision was unanimous, the Court of Appeals must look into the record to determine whether there is any evidence supporting the findings of fact of the referee and the decision of the court below.

*Matter of Randel,* 34 App. Div. 631, affirmed.

(Argued January 11, 1899; decided February 28, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 15, 1898, disbarring defendant and removing him from office as an attorney and counselor at law, upon charges of deceit and malpractice preferred by the Association of the Bar of the City of New York.

The facts, so far as material, are stated in the opinion.

*T. Mitchell Tyng* for appellant. The moving papers do not sufficiently charge Mr. Randel with either "deceit" or "malpractice," and it was erroneous to put him to a trial thereunder. (Code Civ. Pro. § 67.)

*George C. Holt* for respondent. The fact that Randel did not testify raises a legal presumption of the truth of the testimony, which, if untrue, he might have contradicted. (*Wylde* v. *N. R. R. Co.*, 53 N. Y. 156; *Brooks* v. *Steen*, 6 Hun, 517; *People* v. *Dorthy*, 20 App. Div. 308; *R. B. Assn.* v. *Dorthy*, 152 N. Y. 601.) The proof is clear that on June 22, 1895, Randel misappropriated $1,480.21 which he had received as attorney for Magdalinski. (Penal Code, § 528.) If any subsequent agreement can constitute a defense, the burden of proof is upon Randel to establish the validity of such agreement. (*Whitehead* v. *Kennedy*, 69 N. Y. 466; *Howell* v. *Ransom*, 11 Paige, 538; *Evans* v. *Ellis*, 5 Den. 640; *Ford* v. *Harrington*, 16 N. Y. 285; *Nesbit* v. *Lockman*, 34 N. Y. 169.)

BARTLETT, J. The material facts out of which this proceeding arises may be briefly stated. One John Magdalinski became the client of the defendant under the following circumstances: Magdalinski is a German musician, a man of little capacity for the transaction of business, and the referee states that in his appearance before him he was even dull in the comprehension of ordinary business terms. He had saved some two thousand dollars, and in September, 1894, desired to invest it; he had a friend named Metzger, also a musician, who held a mortgage for two thousand dollars as guardian for an infant, and wished to raise money for estate purposes

by selling it. When Metzger learned that Magdalinski had this amount to invest he suggested the purchase of the mortgage and offered to take him to his attorney, the defendant, William F. Randel, where the transaction could be closed. Thereupon, Metzger introduced Magdalinski to the defendant, and in the interview that followed the defendant told him that he knew all about the mortgage and that it was a gilt-edge security. The mortgage was then assigned to Magdalinski and he paid the two thousand dollars to Metzger.

Two or three months later a summons in a foreclosure suit upon a thirty-five hundred dollar mortgage was served upon Metzger, who immediately notified Magdalinski and urged him to protect his rights, as it was averred in the complaint that the mortgage was a first lien upon the same premises covered by Magdalinski's mortgage.

The fact was that these mortgages were recorded at the same time and were entitled to share *pro rata* in the money realized upon the sale. Magdalinski was made a party to the foreclosure suit; both mortgages were foreclosed together and proceeded to judgment and sale. The proceeds of sale were insufficient to pay the liens in full, and the amount realized on Magdalinski's mortgage was $1,480.21. The sale of the mortgaged premises took place on May 22, 1895, and on June 21, 1895, the sheriff gave the defendant, as Magdalinski's attorney, his check for this amount; also his costs in a separate check for $213.45.

It was proved by the check book of the defendant that these checks were deposited in his bank account the next day, June 22d. It also appears that the defendant on the same day drew a check to the order of one Captain D. F. Edwards for $1,250.00, which was in part payment for an interest he was purchasing in the brig "Sunlight" owned by Captain Edwards, it being a second payment on that account, he having the day before drawn a check to the order of Captain Edwards for $1,000.00. The greater part of the money received from the sheriff on the mortgage was necessary to make the $1,250.00 check good.

It further appears that between the day of the sale, May 22, 1895, and the 17th of July, 1895, Magdalinski made many calls upon the defendant for the purpose of obtaining from him the proceeds of the sale of the mortgaged premises, and that the defendant, in none of these interviews, disclosed to him the fact that he had received the money from the sheriff.

Magdalinski swears that about the middle of July, in ignorance of the fact that defendant had been paid by the sheriff, he received from the defendant his note for two thousand dollars, dated July 1, 1895, and payable five months after date ; also received a written guaranty from the defendant agreeing to pay to Magdalinski on December 1, 1895, the sum of $2,264.65 upon surrender of the two-thousand-dollar note, and executing an assignment of his deficiency judgment in the foreclosure suit. The note and guaranty were never paid, except the sum of fifty dollars, and this was the situation at the time these proceedings were instituted by the order of the Appellate Division in October, 1897.

The defendant declined to be sworn in his own behalf at the trial. This refusal to testify raises the legal presumption of the truth of these facts, which must have been known to defendant, and which he failed to contradict. ( *Wylde* v. *Northern R. R. Co.*, 53 N. Y. 156.) This is in no sense a criminal proceeding, and the statutory rule of no presumption in such cases does not apply.

It is contended, on behalf of the complainant, that the essential facts are uncontradicted ; that no claim is made that the defendant was guilty of professional misconduct prior to the misappropriation on June 22, 1895, of the money collected ; the proof is clear that on that day the defendant misappropriated nearly all of the $1,480.21 which he had received as attorney for Magdalinski, and that any agreement made between the defendant and Magdalinski thereafter is immaterial, in view of the fact that the defendant fraudulently concealed from his client the payment of the money to him by the sheriff prior to the execution of the note and guaranty.

This position is met by the claim that the moving papers do not sufficiently charge the defendant with deceit and malpractice, and that the agreement between the defendant and Magdalinski, resulting in the note and guaranty, was not induced by any fraudulent concealment on the part of the defendant; that there is no evidence to support such a conclusion.

The order of the Appellate Division does not show that the decision was unanimous, and we are thus required to look into the record to determine whether there is any evidence supporting the findings of fact by the referee and the decision of the court below.

In addition to the facts already stated, it appears that the defendant confessed judgment for this indebtedness; also that he assigned a policy of insurance on his own life as collateral security.

It was apparently the effort of the defendant throughout this transaction to establish the fact that Magdalinski, with full knowledge of the situation, was willing that he should retain the proceeds of the mortgage sale as a loan, upon his promise to pay him two thousand dollars and interest in five months.

On the other hand, the complainant's position is, that throughout his entire negotiation with the defendant, resulting in the note and guaranty, he had no knowledge of the fact that the money had been actually paid to defendant by the sheriff, but that he was told by the defendant that the original plaintiff in the foreclosure suit having been the purchaser of the property, was able to put off the closing of the matter.

There is a significant fact in the case which goes far to characterize the defendant's good faith in this transaction. After the note had fallen due and was not paid, he gave Metzger, who called upon him in Magdalinski's interest, to understand that he had loaned this money to a man by the name of Morningstar, who was a legatee under a will, and that he was expecting a considerable payment from him immediately, and that he would then be able to pay Magdalinski the amount of

his claim.   Morningstar was not produced at the trial and no effort was made by the defendant to prove a loan to him.

As already pointed out, the record discloses that the greater part of the money was immediately paid out on account of the purchase of an interest in the brig "Sunlight," and that the defendant admitted the fact by the production of his check book before the grievance committee of the Association of the Bar of the City of New York, when it was making the preliminary examination of this charge.

The record shows that just prior to the close of the trial the referee asked the defendant if he did not wish to be voluntarily sworn, and the latter replied, "No, sir, I shall contend that the proofs, as they now stand, and in fact at the conclusion of the petitioner's case, fully established every fact set forth in the answer to the petition."

If there was any possible statement that the defendant could have made, calculated to explain his conduct and relieve himself from the serious consequences of the facts as disclosed by this record, he should have taken the stand, made a full statement and submitted himself to cross-examination.

We are satisfied that there is evidence to support the decision of the court below, the material facts being substantially uncontradicted.

The order appealed from should be affirmed.

All concur.

Order affirmed.