In the Matter of JACOB ROUSS, an Attorney, Appellant. THE ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Respondent.

Attorney at law — proceedings for disbarment of an attorney — such proceeding not a criminal prosecution for the imposition of a penalty or forfeiture — attorney not immune from disbarment because proceeding therefor is based upon testimony on a trial in substance confessing the acts for which he is liable to disbarment — constitutional provision that no person shall be compelled to testify against himself not applicable in such proceeding.

1. Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards, and whenever the condition is broken, the privilege is lost.

2. The State Constitution (Art. 1, § 6) says that no person shall " be compelled in any criminal case to be a witness against him-

self." But to bring him within the protection of the Constitution, the disclosure asked of him must expose him to punishment for crime. A proceeding looking to disbarment is not a criminal case.

3. Disbarment is not a penalty or forfeiture within the meaning of the statute (Penal Law, § 584) providing that no person shall be excused from testifying on any trial for a violation of article 54 of that law (which defines and punishes conspiracy), upon the ground that the testimony required of him may tend to subject him to a penalty or forfeiture, and providing further that no person shall be subjected to any penalty or forfeiture on account of anything concerning which he may so testify, and that no testimony so given shall be received against him upon any criminal investigation, proceeding or trial. Hence, an attorney is not immune from discipline by reason of having given testimony on a trial, which was in substance a confession of the acts for which he is liable to disbarment. (*Matter of Kaffenburgh*, 188 N. Y. 49, distinguished.)

*Matter of Rouss*, 169 App. Div. 629, affirmed.

(Argued April 23, 1917; decided June 5, 1917.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 20, 1915, disbarring the appellant from practice as an attorney and counselor at law.

The facts, so far as material, are stated in the opinion.

*Charles E. Le Barbier, Walter H. Pollak, Charles O. Maas* and *H. H. Nordlinger* for appellant. An attorney's loss of his office is a penalty or forfeiture. (*Matter of Kaffenburgh*, 188 N. Y. 49; *People ex rel. Schauwecker* v. *Green*, 96 N. Y. 249; *Matter of an Attorney*, 83 N. Y. 164; *Matter of Robinson*, 140 App. Div. 329; *Matter of Lauterbach*, 169 App. Div. 534; *Matter of Feuchtwanger*, 139 App. Div. 36; *Matter of Hardenbrook*, 135 App. Div. 634; *Matter of Rothschild*, 140 App. Div. 583; *Matter of Montegriffo*, 171 App. Div. 933; *Matter of Evans*, 169 App. Div. 502; *Matter of Lampke*, 165 App. Div. 899; *Matter of Smith*, 161 App. Div. 638; *Matter of Avrutis*, 161 App. Div. 549; *Matter of Herbst*, 158 App. Div. 601.) A different construction should not be given to the words "penalty or forfeiture" as used in

1917.]            Opinion, per CARDOZO, J.        [221 N. Y.]

the Code of Civil Procedure and as used in the Penal
Law.   The purpose of the Penal Law provision was to
facilitate the administration of justice.   Only if the
statutory immunity is as broad as the ancient right can
that purpose be effected.   If the immunity provision is
to have a narrower construction it will in many cases
fail of its purpose altogether.   For the witness if not
given complete immunity would still invoke his statutory
and common-law right. (*Matter of Cooper*, 22 N. Y.
67; *State* v. *Degress*, 72 Tex. 242; *Bergerow* v. *Parker*,
4 Cal. App. 169; *People ex rel. Beaman* v. *Feitner*, 168
N. Y. 360; *Brown* v. *Walker*, 161 U. S. 591.)

*George W. Wickersham* and *Einar Chrystie* for
respondent.   Section 584 of the Penal Law was not
intended and cannot be construed to render an attorney
at law immune from the discipline by the Appellate Divi-
sion of the Supreme Court when he has been found
guilty of professional misconduct. (*Nelson* v. *Comm.*,
128 Ky. 779; *Ex parte Wall*, 107 U. S. 265; *People* v.
*Burton*, 39 Colo. 164; *People* v. *George*, 186 Ill. 122.)   A
disbarment proceeding is in no sense a criminal proceed-
ing. (*Matter of Randel*, 158 N. Y. 216.)   When an
attorney proves faithless to the trust imposed in him the
courts have always had the power by disbarment pro-
ceedings, not to punish the faithless attorney, but to
uphold the honor of the profession and to protect the pub-
lic in its dealings with its members. (*Matter of Thatcher*,
190 Fed. Rep. 969; *Matter of Peterson*, 3 Paige, 510;
*Matter of Wellcome*, 23 Mont. 450; *Matter of Mills*, 1
Mich. 392.)

CARDOZO, J.   In 1912 the appellant, Jacob Rouss, was
the attorney for one Eugene Fox.   Fox, a member of the
police force in the city of New York, had been brought
before a magistrate on the charge of collecting bribes from
the keeper of a disorderly house.   The keeper of the house,

one George A. Sipp, had been served with a subpœna, or at least there had been to his knowledge an attempt to serve him. Rouss and Sipp's attorney entered into an arrangement that Sipp for a money consideration would keep without the state. The money was paid; Sipp fulfilled his bargain; and Fox was discharged. Indictments were later found against five inspectors of police for conspiracy to obstruct justice through the suppression of Sipp's testimony. On the trial of those indictments, Rouss was a witness for the People. His testimony as there given is in substance a confession of guilt. Charges of professional misconduct were afterward preferred against him. To these charges, he makes answer that he is immune from discipline by force of section 584 of the Penal Law, which says that "no person shall be excused from attending and testifying, or producing any books, papers or other documents before any court, magistrate or referee, upon any investigation, proceeding or trial, for a violation of any of the provisions of this article, [Art. 54 defining and punishing conspiracy], upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him, upon any criminal investigation, proceeding or trial." The question is whether disbarment is a penalty or forfeiture within the meaning of that statute.

Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards (*Selling* v. *Radford*, 243 U. S. 46; *Matter of Durant*, 80 Conn. 140, 147). Whenever the condition is

broken, the privilege is lost. To refuse admission to an unworthy applicant is not to punish him for past offenses. The examination into character, like the examination into learning, is merely a test of fitness. To strike the unworthy lawyer from the roll is not to add to the pains and penalties of crime. The examination into character is renewed; and the test of fitness is no longer· satisfied. For these reasons courts have repeatedly said that disbarment is not punishment (*Ex parte Wall*, 107 U. S. 265; *Matter of Randall*, 11 Allen, 473, 480; *Matter of Randel*, 158 N. Y. 216; *Boston Bar Assn.* v. *Casey*, 211 Mass. 187, 192; *Matter of Durant, supra*). "The question is," said Lord MANSFIELD, "whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion" (*Ex parte Brounsall*, Cowp. 829). "It is not," he continued, "by way of punishment; but the court, on such cases, exercise their discretion whether a man whom they have formerly admitted, is a proper person to be continued on the roll or not." This ruling was announced after consultation with all the judges, "as it is for the dignity of the profession that a solemn opinion should be given." On that high plane the jurisdiction was thus early placed, and in that high spirit it has been exercised. Even pardon will not elude it. Pardon blots out the offense, and all its penalties, forfeitures and sentences; but the power to disbar remains (*Matter of an Attorney*, 86 N. Y. 563). We do not need to inquire now whether the power is so essential and inherent that the legislature may not take it away (*State ex rel. Wood* v. *Raynolds*, 158 Pac. Rep. 413, and cases there cited). At least we will not hold it to have been taken away by words of doubtful meaning. We will not declare, unless driven to it by sheer necessity, that a confessed criminal has been intrenched by the very confession of his guilt beyond the power of removal.

The problem before us, let it be recalled, is one solely of statutory construction. There is no question of constitutional right. The Constitution says that no person "shall be compelled in any criminal case to be a witness against himself" (Const. art. 1, sec. 6). A proceeding looking to disbarment is not a criminal case (*Matter of Randel, supra*). We do not suggest that the witness is protected by the Constitution only when testifying in the criminal courts. The law is settled to the contrary. But to bring him within the protection of the Constitution, the disclosure asked of him must expose him to punishment for crime. There may be a broader privilege by statute or at common law. If that is so, the Constitution does not assure its preservation (*Perrine* v. *Striker*, 7 Paige, 598, 602; *People ex rel. Hackley* v. *Kelly*, 24 N. Y. 74, 82, 83; *Counselman* v. *Hitchcock*, 142 U. S. 547, 562). Where speech will expose to penalties unrelated to crime, the legislature may withdraw the privilege of silence. It has done so in the past (*Perrine* v. *Striker*, supra; *Robinson* v. *Smith*, 3 Paige, 222, 231). It may do so again.

We think that section 584 of the Penal Law was designed to give an immunity as broad as the constitutional privilege, and no broader (*State* v. *Jack*, 69 Kan. 387). Its origin is not doubtful. The rule has always been that disclosure of crimes may be compelled if there is adequate immunity. The difficulty has been to know when the immunity is adequate. *People ex rel. Hackley* v. *Kelly* (24 N. Y. 74, decided in 1861) held it to be a compliance with the Constitution that the testimony of the witness could not be used, though he was still subject to prosecution through the testimony of others. *People ex rel. Lewisohn* v. *O'Brien* (176 N. Y. 253, 268, decided in 1903) overruled *People ex rel. Hackley* v. *Kelly*, followed *Counselman* v. *Hitchcock* (142 U. S. 547), and closed with the suggestion that "if the interests of the People are deemed to require it, it is, of course, quite competent, and

proper,. for the legislative body to provide for an exemption
of the witness from liability to prosecution, as broad in its
effect as is the constitutional privilege." Following that
suggestion, section 584 of the Penal Law and like statutes
(see, *e. g.*, Penal Law, secs. 380 and 381) were enacted.
Their purpose was to make the Constitution and the stat-
ute coextensive and consistent.   Penalties and forfeitures,
as the words are used in this exemption, are penalties and
forfeitures imposed upon an offender as part of the punish-
ment of his crime (*U. S.* v. *Reisinger*, 128 U. S. 398; *Boyd*
v. *U. S.*, 116 U. S. 616; *Lees* v. *U. S.*, 150 U. S. 476;
*U. S.* v. *Regan*, 232 U. S. 37; *La Bourgoyne*, 104 Fed.
Rep. 823).   The statute is a grant of amnesty.   The wit-
ness is to have the same protection as if he had received a
pardon (*Brown* v. *Walker*, 161 U. S. 591, 599; *Burdick* v.
*U. S.*, 236 U. S. 79).   It is inconceivable that the inten-
tion was to give him even more.   But a pardon, as we
have seen, though it blots out penalties and forfeitures,
does not render the courts impotent to protect their honor
by disbarment (*Matter of an Attorney, supra*).   The
legislature cannot have believed that in the interpreta-
tion of a grant of amnesty exemption from penalties and
forfeitures would receive a broader meaning.   Disbar-
ment, therefore, is not within the range of the exemption.
That was the ruling in *Matter of Biggers* (24 Okla. 842;
*S. C.*, 25 L. R. A. [N. S.] 622) in circumstances not to be
distinguished from those before us.   It is a ruling well
sustained by precedent and reason.

There are two other lines of argument which by differ-.
ent methods of approach lead to the same goal.   One
argument is purely verbal.   It points to the concluding
words of the statute: "no testimony so given or produced
shall be received against him, upon any *criminal* investi-
gation, proceeding  or trial " (Penal L. § 584).   The use
of the word " criminal " helps to explain and characterize
the kinds of penalties and forfeitures within the range of
the exemption.   But there is another  argument more

significant than any verbal one. The argument is that unless the immunity is limited to criminal penalties and criminal forfeitures, the state has promised more than it can perform, and the whole statute becomes illusory. There was an ancient rule in chancery that discovery would never be granted in aid of an action for a forfeiture (*Earl of Mexborough* v. *Whitwood Urban District Council* [L. R. 1897] 2 Q. B. 111, 118; *Jones* v. *Jones* [L. R.] 22 Q. B. D. 425; *Martin* v. *Treacher* [L. R.] 16 Q. B. D. 507; *Lansing* v. *Pine*, 4 Paige, 639; *Perrine* v. *Striker*, 7 Paige, 598, 601; *Abernethy* v. *Society of the Church of the Puritans*, 3 Daly, 1, 8, 9). It was merely a branch of the broader principle that forfeitures are abhorred in equity. Cases which illustrate its application are cited by counsel for the appellant: *Honeywood* v. *Selwin* (3 Atk. 276), where the defendant, being a member of Parliament, was held privileged from discovery because by statute the acceptance of other office vacated a seat in Parliament (Wigmore, section 2256 [note 9]) ; *Firebrass's Case* (2 Salk. 550), where the chief ranger of Enfield Chase was held privileged from discovery which might lead to the forfeiture of his place; and other cases where discovery would have shown a violation of the statute against simony. The precedents are collated by Wigmore (section 2256). We are asked to hold that forfeitures within the meaning of the rule in equity and forfeitures within the meaning of this act of amnesty are the same thing. But the consequences of such a holding would be impossible. The argument proves too much. A forfeiture as viewed by courts of chancery had a range and breadth which no exemption granted by the state could rival. One illustration among many will suffice. The loss of an estate for breach of a condition subsequent was a forfeiture within the rule in equity (*Earl of Mexborough* v. *Whitwood, etc.; Jones* v. *Jones ; Martin* v. *Treacher ; Abernethy* v. *Church, supra*). Nice distinctions were drawn in early cases between the determination of the estate by act of the party himself and its

determination by some event not subject to his control. Nice distinctions were also drawn between conditions and conditional limitations. A decision by Chancellor KENT in *Livingston* v. *Tompkins* (4 Johns. Ch. 415, 420) swept these distinctions aside; the estate, however lost, was forfeited; and the forfeiture would find no aid in equity. That was not a rule of evidence. It was one of the principles regulating the exercise of chancery jurisdiction (*Livingston* v. *Tompkins, supra*).

Side by side with this principle of chancery jurisdiction there grew up a rule of evidence — a privilege of witnesses — which was enforced in courts of law. Its origin is obscure. At one time the law of evidence may have known no privilege at all (Wigmore, section 2250). When the privilege first came, its scope was uncertain. There was doubt, indeed, whether a witness could be compelled to answer if by so doing he would subject himself to a civil action, or charge himself with a debt (2 Taylor on Ev. sec. 1463; Wigmore on Ev. sections 2223, 2254). Discussion of the subject in *Lord Melville's* case led to the statute 46 Geo. 3, ch. 37. That statute is the precursor of section 837 of our own Code (Code Civ. Pro. § 837). It established the rule that the witness must testify unless the answer will tend to accuse him of a crime or expose him to a penalty or forfeiture. The penalties and forfeitures, however, were not defined. Whether they are as broad as penalties and forfeitures within the meaning of the rule in equity is still an open question, and one not now before us. Chief Justice COCKBURN expressed his doubts upon that subject in *Pye* v. *Butterfield* (5 B. & S. 829, 836). (See also Wigmore, section 2256.) But the thing which concerns us now is not the meaning of the statutory privileges of silence where that privilege survives. We are concerned with the extent of the *exemption* where the privilege has been taken away. The forfeitures and penalties which the state undertakes to remit cannot be the forfeitures and penalties which equity

refused to aid; and this for the simple reason that the state would be powerless to remit them effectively. Again, a single illustration serves our purpose. The witness on a trial for conspiracy who shows that he has violated a condition of his lease, has thereby exposed himself to forfeiture of his estate at the election of his landlord. The forfeiture, however, is óne which no act of amnesty can waive. We cannot suppose that the legislature attempted to waive it. We cannot impute to the lawmakers a futile and frivolous intent. The alternative is to hold that the forfeitures remitted are forfeitures imposed by the sovereign power as part of the punishment of crime. If some other construction is possible, there is none so reasonable and obvious. Punishment of crime may for this purpose include the recovery from the offender of penalties and forfeitures through the form of civil actions (*U. S.* v. *Regan, supra,* at p. 50; *Hepner* v. *U. S.,* 213 U. S. 103, 111). But punishment there must be.

Our decision in *Matter of Kaffenburgh* (188 N. Y. 49) is pressed upon us as controlling. But we think it is inapplicable. Kaffenburgh had refused to answer when called as a witness upon the trial of an indictment for conspiracy. He put his refusal on the ground that the answer would tend to criminate him. That was before the enactment of section 584 of the Penal Law. Disbarment proceedings were afterwards begun, and the charge was made that the refusal to answer was professional misconduct. That charge was not sustained either in the Appellate Division or in this court. Disbarment was ordered, but on other grounds. Much that was said was in reality unnecessary to the decision. There was no occasion to determine whether Kaffenburgh's refusal to testify was proper because it tended to expose him to a forfeiture of office. He had placed his refusal on the ground of a tendency to criminate him, and that of itself was sufficient to sustain him. We may assume, how-

ever, the binding force of the opinion in all its parts.    If we give it that force, it does not reach this case.    It defines at the utmost the scope of section 587 of the Code of Civil Procedure.    It measures the statutory privilege when no part of the privilege has been withdrawn. ·  In the case at hand, the privilege has been withdrawn.    It has been withdrawn by section 584 of the Penal Law. In return for the loss of the privilege there has been  the grant of a new exemption.    It is that exemption and not the vanished privilege, which is now to be defined.    *Matter of Kaffenburgh* did not decide that disbarment for professional misconduct is a penalty or  forfeiture within the meaning of an act of amnesty (*Matter of an Attorney*, 86 N. Y. 563).    If it did, we could not follow it.

Consequences cannot alter  statutes, but may help to fix their meaning.    Statutes must be  so  construed, if possible, that absurdity and mischief may be avoided. The claim of immunity from disbarment cannot survive the application of that test.    If the exemption protects lawyers, it must equally protect physicians, whose licenses have  long  been  subject  to  revocation  for  misconduct (Public Health Law, § 170; Consol. Laws, ch. 45; 1 R. S. 452, § 3; *Matter of Smith*, 10  Wend. 449; *Allinson* v. *Gen. Council of Medical Education* [L. R. 1894] 1 Q. B. 750).    Two great and honorable  professions have  in that view been  denied the right to  purify their membership and vindicate their honor.    The charlatan and rogue may assume to heal the sick.    The  knave  and  criminal may pose as a minister of justice.    Such  things cannot have been intended, and will not be allowed. ·

The order of disbarment should be affirmed.

HISCOCK, Ch. J., CHASE, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur; HOGAN, J., not voting.

Order affirmed.