PATRICK G. TIGHE, Respondent, v. SINCLAIR REFINING COMPANY, Tenant, and WILLIE AMATULLI, Appellant.

First Department, June 7, 1948.

*Harry Simon* of counsel (*Joseph W. Landes* with him on the brief), for appellant.

*Joseph H. Schnabel* of counsel (*Joseph Kleiner,* attorney), for respondent.

SHIENTAG, J. The petition in this summary proceeding alleges that petitioner, as landlord-owner of the fee, entered into a written lease with one Rosen for a term of ten years commencing May 1, 1933; that by mesne assignments which were accepted by the landlord, Sinclair Refining Company became the tenant and agreed to be bound by all the terms and conditions of the lease; that by written agreement dated April 21, 1943, petitioner and tenant Sinclair Refining Company extended the beforementioned lease for one month commencing May 1, 1943, and from month to month thereafter with the proviso that either party should have the right to terminate the lease and extension agreement at the end of any calendar month by giving to the other party at least thirty days notice in writing.

It is further alleged that the tenant Sinclair Refining Company still occupies the premises under the lease as modified; that the tenant is using the premises predominantly as commercial space as defined by chapter 3 of the Laws of 1945, as amended; that Willie Amatulli is the subtenant of the main tenant Sinclair Refining Company and together with the latter

and for some time prior to the date of the petition, August 15, 1947, occupied and still occupies the demised premises; that thirty days' notice in writing was given by petitioner to the tenant of petitioner's election to terminate the lease and extension agreement at the end of the calendar month June, 1947; that the term for which the premises were hired by the tenant has expired and that Sinclair Refining Company as tenant and William Amatulli as subtenant hold over and continue in possession of the premises without the permission of the landlord after expiration of said tenant's term.

The petition then alleges that the emergency rent of the landlord as defined by subdivision (e) of section 2 of chapter 3 of the Laws of 1945, as amended, is not less than $3,450 a year; and that the tenant Sinclair Refining Company refused to execute upon demand of the landlord a renewal lease pursuant to the provisions of the emergency statute.

The record also contains a stipulation dated August 18, 1947, between the attorneys for the landlord and the attorneys for the tenant Sinclair Refining Company consenting to the entry of a final order awarding the landlord possession of the premises.

The answer of Willie Amatulli, designated in the petition as subtenant, in effect amounted to a general denial.

A jury was empanelled on September 11, 1947, but at the outset of the trial a colloquy ensued between counsel and the court with respect to the issues involved. The jury was dismissed, over the objection and exception of the attorney for the alleged subtenant, and the court on October 3, 1947, handed down its opinion, holding that, on the authority of *Valeray Real Estate Co.* v. *National Transportation Co.* (270 App. Div. 805), Amatulli was a subtenant and as such did not come within the definition of "tenant" in section 2 of chapter 3 of the Laws of 1945 (Commercial Rent Law); that the main tenant having consented to the entry of a final order the subtenant was not a statutory tenant and did not come under the protection of the emergency rent statute. That determination was affirmed by the Appellate Term and leave thereafter granted to appeal to this court.

The discussion between counsel, above referred to, related among other things to a proceeding that had been commenced in the Supreme Court to fix the emergency rent, in which proceeding the tenant and alleged subtenant were parties; the contention was made that Amatulli was an assignee of the lease rather than a subtenant and that he was willing to enter into

any appropriate lease in accordance with the provisions of the emergency statute.

We believe that the action of the trial justice in dismissing the jury over the objection of the alleged subtenant Amatulli was erroneous, there being, as claimed, contested issues of fact and of law. The lease and the extension agreement, between the landlord and the main tenant, and the lease or rental agreement between Sinclair and Amatulli, are not in the record, nor are any details given concerning the proceedings in the Supreme Court for the fixation of the emergency rent. It seems to be assumed, although that is contrary to the allegations of the petition, that for some time Amatulli has been in possession of the entire demised premises. At any rate, he so contends, and that being so, the main tenant Sinclair Refining Company was only in constructive possession. The case, therefore, should have been tried and the facts in connection with the foregoing as well as all other relevant facts relating to the status of Amatulli. fully developed. If Amatulli is an assignee of the lease, he clearly stands in the same position as the main tenant; so, too, if Amatulli had attorned to the landlord.

Assuming, however, that Amatulli was not an assignee and had not attorned but that at the time of the effective date of the emergency rent statute he was lawfully in possession of the entire premises under a sublease which the main tenant had authority to make, what would be this subtenant's rights under the emergency rent statute?

Subdivision (i) of section 2 of chapter 3 of the Laws of 1945 (Commercial Rent Law) and its counterpart, subdivision (e) of section 2 of chapter 314 of the Laws of 1945 (Business Rent Law) defines " tenant " as follows: " ' Tenant '. A lessee, sublessee. licensee, or other person entitled to the possession or to the use or occupancy of the whole or a part of any commercial space." This definition is very broad and by its terms is not limited to the conventional relationship of landlord and tenant. Its very language excludes any such narrow construction. Though it is urged that the definition says " entitled to the possession or to the use of occupancy " rather than " in possession ", that is a far-fetched distinction not warranted by the language or purport of the definition. In any event, Amatulli was, it is contended, a lawful subtenant at the time the emergency rent statute became effective and was not only in possession of the entire demised premises but lawfully entitled to the possession thereof. That being so, nothing that the main tenant

(out of possession) could do would in any way affect the right of such subtenant to the protection of the emergency statute.

Section 8 of the Commercial Rent Law (L. 1945, ch. 3, § 8) and a similar provision, section 8 of the Business Rent Law (L. 1945, ch. 314, § 8) present "grounds for removal of a tenant from possession." One of those grounds is set forth in subdivision (e) of each section which, so far as here pertinent, reads as follows: "(e) The tenant whose lease or rental agreement has expired or shall hereafter expire during the continuance of the emergency declared by this act has refused * * * to execute, upon demand of the landlord, a renewal of the prior lease or rental agreement for a further term of like duration or for such shorter term as the landlord may elect, on substantially similar terms and conditions as are contained in such prior lease or rental agreement, provided that the terms and conditions of such renewed lease or rental agreement are not inconsistent with any provisions of this act * * *."

It is contended that the foregoing provision, which specifies one of the grounds upon which the landlord may recover possession, is inconsistent with the broad definition of "tenant" above set forth and that it indicates that the term "tenant" was intended to be limited to the conventional relationship of landlord and tenant. We see no such inconsistency, however, particularly where the subtenant is in possession of the entire demised premises and that is the only situation we are here considering. We do not pass upon the status, under the emergency rent statutes, of a subtenant of a portion of the premises.

The landlord is not required to give a lease to anyone not of his own choosing but that is no reason why the statute should be construed so as to permit of the ouster of a subtenant of the entire demised premises who is ready and willing to make the lease or rental agreement called for by the statute. Unless the emergency rent law is so construed, we would have this situation; the main tenant of the demised premises, not being in actual possession of any part thereof and having only constructive possession, would not be entitled to protection under the emergency statute (*WMCA* v. *Blockfront Realty Corp.*, 67 N. Y. S. 2d 867, affd. 272 App. Div. 800) and the lawful subtenant of the entire demised premises in actual possession thereof, not being in privity with the landlord under the conventional relationship of landlord and tenant, would likewise not be entitled to its protection. Such a construction would do violence not only to the definition of "tenant" in the act, for the period

of the statutory emergency, but to the fundamental purpose of the emergency legislation itself.

The statute should be construed in such a way as to give effect, so far as possible, to all of its provisions, and in a manner that would tend to harmonize them and reach a consistent result. " Consequences cannot alter statutes, but may help to fix their meaning." (*Matter of Rouss,* 221 N. Y. 81, 91.) Assuming the subtenant to have been lawfully in possession of the entire demised premises at the effective date of the emergency statute, he may be protected thereunder without doing violence to the letter or spirit of the statute and without changing, enlarging or omitting any language employed therein (see *Keifer & Keifer* v. *R. F. C.,* 306 U. S. 381, 391, note 4; *United States* v. *Hutcheson,* 312 U. S. 219, 235.) *Valeray Real Estate Co.* v. *National Transportation Co.* (270 App. Div. 805) is not a holding to the contrary. It suffices to point out that in the *Valeray* case an undertenant of part of the premises was one of the parties and up to the time of trial took the position that it could remain in its portion of the building without taking a lease of the whole premises. Before the summary proceedings were brought, a lease had been offered to the subtenant of the entire premises but was not executed by that tenant.

The determination of the Appellate Term and the final order of the Municipal Court should be reversed and a new trial ordered, with costs in this court and in the Appellate Term to the appellant to abide the event.

DORE, J. (dissenting). I dissent and vote to affirm (*Valeray Real Estate Co.* v. *National Transportation Co.,* 270 App. Div. 805). On the admission by the subtenant of crucial allegations in the petition, no issues of fact survived for the jury.

PECK, P. J. and VAN VOORHIS, J., concur with SHIENTAG, J.; DORE, J., dissents and votes to affirm in opinion in which GLENNON, J., concurs.

Determination of the Appellate Term and final order of the Municipal Court reversed and a new trial ordered, with costs in this court and in the Appellate Term to the appellant to abide the event. Settle order on notice. [See *post,* pp. 822, 875.]