THE COMMITTEE ON LEGAL ETHICS OF THE

WEST VIRGINIA STATE BAR

*v.*

PHILIP JAMES GRAZIANI

(No. 13396)

Submitted September 19, 1973. Decided November 20, 1973.

*Campbell, Love, Woodroe & Kizer, David A. Faber* for Legal Ethics Committee.

*Leo Catsonis, Thomas L. Linkous* for defendant.

PER CURIAM:

This is a proceeding for disciplinary action instituted by the Committee on Legal Ethics of the West Virginia State Bar pursuant to the authority conferred by Part D, Article VI of the By-Laws of the West Virginia State Bar. The defendant, Philip James Graziani, a licensed attorney and member of the West Virginia State Bar, was charged with professional misconduct by the Committee on Legal Ethics. The verified complaint alleges that the defendant combined and conspired with others to commit bribery and did bribe James Frederick Haught, a Federal Housing Commissioner of West Virginia. Thus, the Committee on Legal Ethics contends that the defendant's license to practice law should be annulled. On July 30, 1973 this Court issued a rule directing the defendant to appear and show cause why his license to practice law should not be annulled. On September 19, 1973 the case was submitted for decision upon briefs and oral arguments on behalf of the respective parties.

It appears from the pleadings that in the latter part of 1969 the defendant, after several conferences with law enforcement officials, volunteered to testify before the Grand Jury of Kanawha County and was assured that no

statements he made would be used against him. On December 10, 1969 the defendant was summoned to appear before the Grand Jury of Kanawha County and testified after the Intermediate Court of Kanawha County entered an order granting defendant " * * * full and complete immunity from prosecution under Federal or State law * * * ."

On August 5, 1971 the defendant appeared before a grand jury of the United States District Court for the Southern District of West Virginia and testified to the effect that C. Donald Robertson and Dana Aubrey Robertson had conspired to bribe and did bribe James Frederick Haught. Subsequently, C. Donald Robertson, Dana Aubrey Robertson, and James Frederick Haught were indicted for violating Section 201, Title 18 of the United States Code (bribery of a public official) and Section 1952, Title 18, United States Code (interstate transportation in aid of racketeering enterprises). All three subsequently pleaded guilty, were fined and imprisoned.

The Committee on Legal Ethics was subsequently informed that the defendant had testified before the federal grand jury about his own participation in the bribery conspiracy. On February 12, 1973 the Committee filed a petition in the United States District Court for the Southern District of West Virginia seeking disclosure of the grand jury minutes with respect to the testimony of the defendant and one Arthur J. Tarley. Over the objection of the defendant's attorney, the United States District Court ordered the United States Attorney to provide the Committee on Legal Ethics with the requested transcript of testimony.

After reviewing the grand jury testimony, the Committee on Legal Ethics informed the defendant that a formal hearing would be held. The hearing was held on May 3, 1973 and defendant's attorney appeared on behalf of the defendant and objected to the use of the grand jury transcript, contending the defendant had been granted

immunity from any and all proceedings against him and thus his testimony could not be used by the Committee on Legal Ethics. Counsel for the defendant stated that no evidence would be offered on behalf of the defendant and that the defendant would rely solely on his immunity defense to the charges against him. The Committee overruled the defendant's motion to dismiss the statement of charges against him on the grounds that the use of defendant's federal grand jury testimony did not violate his constitutional right against self-incrimination.

The defendant's testimony before the federal grand jury revealed that the defendant represented Centurion Corporation, a construction company. The president of Centurion Corporation, Arthur J. Tarley, and a Federal Housing Director, James Frederick Haught, entered into an arrangement in which Tarley would pay Haught a $50 "finder's fee" for each apartment unit constructed by Centurion Corporation. Tarley informed the defendant of this arrangement and it was agreed that Tarley would forward funds to the defendant for the so-called "finder's fee" and the defendant would pass the funds on to Haught. On six separate occasions over approximately 16 months, the defendant gave Haught $18,700 in cash that had been sent to the defendant by Tarley. The defendant was also aware of another $12,500 that was given to Haught by the defendant's law partner, Dana Aubrey Robertson, which sum was drawn out of the partnership account of the law firm.

The Committee concluded from the testimony that the defendant was engaged in bribery and thus he was guilty of professional misconduct and his license to practice law should be annulled. A petition was then filed in this Court to annul the defendant's license to practice law.

The question involved in the instant case is whether the testimony of an attorney given before the grand jury under a grant of immunity can be used in a disbarment proceeding against the attorney. It is generally held that immunity statutes apply only to criminal prosecutions.

*Ullmann v. United States,* 350 U.S. 422, 76 S. Ct. 497, 100 L. Ed. 511; *Zuckerman v. Greason,* 285 N.Y.S.2d 1, 231, N.E.2d 718; *In Re Schwarz,* 51 Ill. 2d 334, 282 N.E.2d 689; *State v. Simon,* 132 W.Va. 322, 52 S.E.2d 725; *State v. Abdella,* 139 W.Va. 428, 82 S.E.2d 913.

It is true that the West Virginia cases cited above, *Simon* and *Abdella,* involved criminal prosecutions. However, in connection with the matter the Court stated in the *Abdella* case: "The Legislature, in our opinion, intended by the enactment of Code, 57-5-2, to give to a witness who is required to testify or produce evidence of a self-criminating nature an immunity from a criminal prosecution which is based in any 'way upon the self-criminating evidence, an immunity which is coextensive with the privileges which the witness would have under the Fifth Amendment to the Constitution of the United States, and Article III, Section 5, of the Constitution of West Virginia, were it not for the enactment of the statute. * * * "

It is the contention of the defendant that a disbarment proceeding is a criminal proceeding, and, therefore, the testimony of the defendant given before the federal grand jury cannot be used in this proceeding to disbar him. We have found no cases that hold that disbarment proceedings are criminal proceedings. If disciplinary proceedings were held to be criminal proceedings then the Legal Ethics Committee of the State Bar, where such cases are initiated, would have the burden of proving beyond a reasonable doubt the issues involved and the case would have to be tried by a jury. It has been held that the evidence must be full, prefondering and clear in disciplinary actions, and not beyond a reasonable doubt. *Committee on Legal Ethics v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312. It is true that one case decided by the Supreme Court of the United States, *In Re Ruffalo,* 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117, indicated that disbarment proceedings were quasi-criminal proceedings and held that an attorney is entitled to procedural due process in

disbarment proceedings. However, a quasi-criminal proceeding does not mean it is a criminal proceeding, and, in fact, this Court held in the case of *In Re Brown,* 157 W.Va. 1, 197 S.E.2d 814, that such proceedings are neither civil actions nor criminal prosecutions but that such proceedings are special proceedings which are peculiar in their nature.

It is also the contention of the defendant that the immunity statute, Code, 57-5-2, applies not only to criminal but also to civil actions as well, because it states that such self-criminating testimony or evidence shall not be used in "any proceeding". We are of the opinion that the statute applies only to any criminal proceeding because the immunity statutes in many states are broader than in this state and typically provide that the immunity applies where there is any type of penalty or forfeiture involved. But it has been held in those states with such broad immunity statutes that the immunity applies only to criminal proceedings. *In Re Rouss,* 221 N.Y.81, 116 N.E. 782, (*cert. denied* 246 U.S. 661, 38 S. Ct. 332, 62 L. Ed. 927); *Ullmann v. United States, supra.*

It has been repeatedly held that testimony or evidence given by an attorney under a grant of immunity could be used in disbarment proceedings against the attorney. *In Re Biggers,* 24 Okla. 842, 104 P. 1083; *In Re Rouss,* 221 N.Y. 81, 116 N.E. 782; *The Florida Bar v. Massfeller,* (Fla.) 170 So. 2d 834; *In Re Farrell,* 27 A.D.2d 61, 276 N.Y.S.2d 61; *In Re Schwarz,* 51 Ill. 2d 334, 282 N.E.2d 689. The case of *In Re Rouss* was decided by Judge Cardozo in 1917 before he was elevated to the Supreme Court of the United States. The facts are on all fours with the case at bar and Judge Cardozo held that immunity from any penalty or forfeiture as provided by the immunity statute in New York did not apply to disbarment proceedings within the meaning of the immunity statute and stated in that case that: " * * * We will not declare, unless driven to it by sheer necessity, that a confessed criminal has been intrenched by the very confession of his guilt beyond the power of removal [from the Bar]."

In the case of *The Florida Bar v. Massfeller, supra,* decided in 1964, it was held that where an attorney admitted to his misconduct he could not rely on the immunity statute in a subsequent disbarment proceeding. The Florida Court, in that case, said: "We hold that it was not the intent of the legislative act granting immunity from 'prosecution, penalty or forfeiture' to immunize members of the Bar from disciplinary proceedings or punishment instituted or imposed by or under authority of rules of this Court, for a contrary opinion would recognize the power and purpose of the Legislature to abridge or curtail the constitutional power of this court as part of a coordinate and equal branch of the government of this state. The Constitution of this state vests exclusive jurisdiction over the admission and discipline of attorneys at law in this Court and authorizes it to exercise such jurisdiction through delegation of authority to the circuit courts and district courts of appeal, or by commissioners of members of the Bar, subject to this court's supervision and review. * * * " See Article VIII, Section 1 of the Constitution of West Virginia and Code, 51-1-4a, as amended, for such powers in this State.

In the case of *In Re Schwarz, supra,* decided in 1972, it was held that the immunity statute in Illinois extended only to criminal prosecutions and that disbarment proceedings, based on an attorney's testimony after he had been granted immunity at the trial of a judge whom he had bribed, did not violate the attorney's rights under the Fifth Amendment.

The defendant relies on the case of *Spevack v. Klein,* 385 U.S. 511, 87 S. Ct. 625, 17 L. Ed. 2d 574. That case merely held that an attorney could not be disbarred for refusing to produce documents in a judicial inquiry into professional misconduct of an attorney. It was contended by the respondent attorney in the *Schwarz* case that the holding in the *Spevack* case was applicable to disbarment proceedings and that testimony given under a grant of immunity could not be used in such proceeding. The

Court in that case stated that such interpretation of the *Spevack* case was entirely too broad and allowed such testimony under a grant of immunity to be used in a disbarment proceeding.

It was held in the case of *Anderson v. Coulter,* 16 Ariz. App. 27, 490 P.2d 856, where the immunity statute stated that a witness compelled to testify could not be prosecuted or subjected to any penalty or forfeiture, the term penalty or forfeiture was restricted to penalties or forfeitures in a criminal proceeding and that the immunity statute had no effect on subsequent civil sanctions against the witness.

The record in this case indicates that the defendant was granted immunity by the Intermediate Court of Kanawha County with regard to his testimony before the grand jury of said court, apparently for violations of the laws of the State of West Virginia, and there is no indication that he was granted immunity by the United States District Court when he testified before the grand jury of that Court, which related to bribery and conspiracy to commit bribery of a federal employee or officer which was not a crime against the State of West Virginia. However, the testimony arose out of the testimony the defendant gave before the grand jury of the Intermediate Court of Kanawha County and it has been held that such grant of immunity must afford protection and extend to federal proceedings. *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S. Ct. 1594, 12 L. Ed. 2d 678.

The testimony before the federal grand jury which is made a part of the record in this proceeding clearly shows that the defendant was guilty of bribery and conspiracy to commit bribery. It has been repeatedly held that such crimes are crimes that involve moral turpitude which warrant the disbarment of any attorney guilty of such crimes. *In re Barron,* 155 W.Va. 98, 181 S.E.2d 273; *In re Dana Aubrey Robertson* and *In re C. Donald Robertson,* 156 W.Va. 463, 194 S.E.2d 650; *In re Brown,* 157 W.Va. 1, 197 S.E.2d 814. Thus, the testimony of the defendant in

this case before the grand jury amounts to a confession of guilt of a crime involving moral turpitude and warrants the disbarment of the defendant. *In Re Rouss, supra; In Re Schwartz, supra.*

For the reasons stated herein, the defendant's license to practice law is annulled.

*License to practice law annulled.*