Per Curiam.

The sole issue before the court is whether incriminating testimony given by an attorney, following a grant of immunity, may be used as evidence against him in a disciplinary proceeding.
The appellants, attorneys admitted to practice in the State of New York, were called to testify before a Grand Jury investigating alleged irregularities in the fixing of traffic tickets in the City Court of Buffalo. The District Attorney requested that they execute waivers of immunity which they declined to do, and the Grand Jury then voted them full immunity pursuant to CPL 50.10. The Grand Jury probe resulted in an indictment against certain officials and, subsequently, the appellants, still retaining immunity, testified at the trial of these officials. Thereafter, they were served with a petition and notice of motion instituted by the respondent Bar Association seeking to have them disciplined for their involvement in the activity concerning which they had testified. After service of the petitions, the appellants commenced an action in the Federal District Court seeking an injunction against prosecution of these disciplinary proceedings. The respondent’s motion to dismiss the Federal action was granted on the ground of insufficiency under the abstention doctrine of Younger v Harris (401 US 37), and that dismissal was affirmed (Anonymous J. v Bar Assn, of Erie County, 515 F2d 435, cert den 423 US 840). Thereafter, appellants moved in the Appellate Division for an order dismissing the petitions on the ground that they had been granted immunity from any penalties or forfeitures arising out of the transactions concerning which they had testified. The Appellate Division denied the motion to dismiss and granted leave to appeal to this court on a certified question. We affirm the order of the Appellate Division and answer the certified question in the affirmative.
Initially, we confront the question of statutory construction of the immunity statute. The appellants were granted immunity pursuant to and defined in CPL 50.10 which provides that: "A person who has been a witness in a legal proceeding, and who cannot, except as otherwise provided in this subdivi *508 sion, be convicted of any offense ór subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein, possesses 'immunity’ from any such conviction, penalty or forfeiture. A person who possesses such immunity may nevertheless be convicted of perjury as a result of having given false testimony in such legal proceeding, and may be convicted of or adjudged in contempt as a result of having contumaciously refused to give evidence therein.” The appellants strongly urge that the possible sanctions flowing from the disciplinary proceeding constitute a "penalty or forfeiture” within the meaning of the statute. Without doubt the sanctions which may be imposed in such proceedings may have serious consequences resulting in impairment of repute, loss of clientele, or, in the case of disbarment, loss of license to practice a profession which is their very source of livelihood. Although serious in consequence, these sanctions are not penalties or forfeitures within the meaning of the Criminal Procedure Law. The penalties and forfeitures encompassed by this immunity are those imposed or sought to be imposed as punishment upon conviction for a criminal offense committed in violation of the Penal Law or other statute of the State (Matter of Klebanoff, 21 NY2d 920, cert den 393 US 840; Matter of Zuckerman, 20 NY2d 430, cert den 390 US 925, reh den 390 US 975; People ex rel. Karlin v Culkin, 248 NY 465; Matter of Rouss, 221 NY 81; Matter of Ungar, 27 AD2d 925, cert den 389 US 1007). We hold that disciplinary sanctions are not punishment within the meaning of section 50.10. As Judge Cardozo explained in Matter of Rouss (supra, pp 84-85): "Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards [citations omitted]. Whenever the condition is broken, the privilege is lost. To refuse admission to an unworthy applicant is not to punish him for past offenses. The examination into character, like the examination into learning is merely a test of fitness. To strike the unworthy lawyer from the roll is not to add to the pains and penalties of crime.” Whether the practice of law is termed a privilege (Matter of Rouss, supra) or a right (Matter of Levy, 37 NY2d 279, 282) disciplinary sanctions imposed for misconduct are not criminal penalties under the statute.
Immunity does not protect against all private consequences *509 of the facts or involvement revealed by testimony given under its shelter. And some people, because of their relationship with government, may suffer governmentally imposed consequences of a serious nature (see Uniformed Sanitation Men Assn. v Commissioner of Sanitation, 426 F2d 619, cert den 403 US 917; Note, Immunity Statutes and the Constitution, 68 Col L Rev 959). The criterion is whether the sanctions are imposed in the context of a criminal proceeding, covered by immunity, or whether such subsequent proceedings are civil in nature where immunity does not necessarily extend. Disciplinary proceedings against an attorney for professional misconduct have consistently been held not to be criminal proceedings but rather are those which serve to protect the court and society from the practice of law by persons who fail to maintain the necessary standards of integrity and probity (Matter of Zuckerman, supra; Matter of Randel, 158 NY 216; Matter of Dougherty, 7 AD2d 163, affd 7 NY2d 869, remittitur amd 7 NY2d 965; Judiciary Law, § 90; Chilingirian, State Disbarment Proceedings and the Privilege Against Self-Incrimination, 18 Buffalo L Rev 489). The immunity statute, prohibiting use of covered testimonial evidence in criminal proceedings, does not bar the use of such evidence in disciplinary proceedings brought against an attorney on the grounds of misconduct; and this has been the established law in this State for over 40 years (Matter of Solovei, 250 App Div 117, 121, affd 276 NY 647).
The appellants also contend that the Fifth Amendment privilege against self incrimination precludes the use of any immunity-clothed statements in a disciplinary proceeding. The appellants were concededly granted transactional immunity in return for their Grand Jury and trial testimony. They assert that their testimony was compelled by the grant of immunity arguing that subsequent refusal would result in contempt charges and as such must be coextensive with the privilege against self incrimination which it replaced and that privilege must be deemed to protect against the use of compelled self-incriminating statements in disciplinary proceedings. This argument has a surface attractiveness that dissipates under analysis.
The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself’ (emphasis added), and the State Constitution assures this privilege in the very same language (NY Const, art I, § 6). *510 These constitutional protections forbid the State from compelling incriminating answers which may be used in any criminal proceedings but they permit "that very testimony to be compelled if neither it nor its fruits are available for such use” (Lefkowitz v Turley, 414 US 70, 84; Kastigar v United States, 406 US 441). Where immunity coextensive with the privilege against self incrimination is granted, the courts have the power to compel testimony by the use of civil contempt and coerced imprisonment (Lefkowitz v Turley, supra; Shillitani v United States, 384 US 364; Matter of Rushkin v Detken, 32 NY2d 293; see People v Ianniello, 21 NY2d 418, cert den 393 US 827). The Supreme Court has held that "immunity from use and derivative use is coextensive with the scope of the privilege against self incrimination, and therefore is sufficient to compel testimony over a claim of the privilege” (Kastigar v United States, supra, p 453). The New York statute goes further and provides full transactional immunity (Matter of Gold v Menna, 25 NY2d 475; Pitler, New York Criminal Practice under the CPL, p 241). Thus, the appellants are clothed with full transactional immunity which immunizes them against prosecutions for any and all crimes to which their testimony might relate.
The constitutional protection does not, however, extend to its use in other than criminal proceedings. It is certain that the privilege against self incrimination may be asserted in any situation where the testimony may ultimately be used in a criminal proceeding against the person testifying (Matter of Gault, 387 US 1, 47-48), but where immunity bars such use the testimony is nonetheless admissible in other noncriminal hearings such as those involving disciplinary charges. The salient question is whether that proceeding is a criminal case within the purview of the Fifth Amendment. A criminal case is "one which may result in sanctions being imposed upon a person as a result of his conduct being adjudged violative of the criminal law. The essence of state bar disciplinary proceedings, however, is not a resolution regarding the alleged criminality of a person’s acts, but rather a determination of the moral fitness of an attorney to continue in the practice of law. Although conduct which could form the basis for a criminal prosecution might also underlie the institution of disciplinary proceedings, the focus is upon gauging an individual’s character and fitness, and not upon adjudging the criminality of his prior acts or inflicting punishment for them” *511 (Matter of Daley, 549 F2d 469, 474). In urging a contrary position, appellants rely on cases which are not here applicable. In Spevack v Klein (385 US 511) the Supreme Court held that an attorney could not be disciplined solely on the ground that he had asserted his privilege against self incrimination. The threat of disbarment for the mere exercise of the privilege was viewed as an unconstitutional compulsion to waive the privilege without a coextensive protection against the ultimate use of those statements in a criminal proceeding. Likewise in Garrity v New Jersey (385 US 493) certain police officers made incriminating statements during an inquiry concerning the fixing of traffic tickets. The statements were made under the threat that if they refused to respond to the questions put to them, they would be removed from office. Since no immunity was granted, the Supreme Court considered those threats coercive, negating any apparent waiver of the privilege against self incrimination and the statements were thus declared inadmissible in a later criminal action against them. Further, in Gardner v Broderick (392 US 273) the court held that refusal to waive the privilege could not be grounds for termination of a police officer’s employment. In all of these cases testimony was being compelled by threats of disbarment or the loss of employment without a guarantee that the statements would not later be used in criminal proceedings. The Fifth Amendment and our State Constitution prohibit such coercion. But these decisions in no way imply that once immunity coextensive with the privilege is granted, the statements may not be used in a disciplinary hearing. When assurance is made that the statements cannot be used in a related criminal action, the constitutional privilege is satisfied and no more is required. Further use of the information does not offend the essential purposes of the privilege but guarantees the proper opportunity for the pursuit of other public values.
The State has a compelling interest in regulating our system of justice to assure high standards of professional conduct. Sanctions imposed in that capacity are distinct and apart from penalties and forfeitures stemming from criminal proceedings. Once the constitutional guarantee that no person "shall be compelled in any criminal case to be a witness against himself’ is assured by a grant of immunity, the State may act, and indeed must act, in its supervisory capacity to assure that those standards are maintained.
*512 Accordingly, the order of the Appellate Division should be affirmed and the certified question answered in the affirmative.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in Per Curiam opinion.
Order affirmed, without costs. Question certified answered in the affirmative.