In the Matter of LOUIS KAYE (Admitted as LOUIS KAMINETSKY), an Attorney, Respondent. CO-ORDINATING COMMITTEE ON DISCIPLINE OF THE ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, THE NEW YORK COUNTY LAWYERS' ASSOCIATION AND THE BRONX COUNTY BAR ASSOCIATION, Petitioner.

First Department, January 13, 1966.

346

*Angelo T. Cometa* (*Walter H. Schulman* with him on the brief), attorney for petitioner.

*Matthew A. Campbell* for respondent.

*Per Curiam.* The petition herein alleged that respondent had been guilty of professional misconduct as set forth in nine separate charges. After hearings, a Referee reported that eight of the charges had been sustained. Charge No. 4, which the Referee dismissed, involved the compromise of infants' claims without court order. The Referee's report should be confirmed except as to his conclusion on Charge No. 4, which in our opinion should also have been sustained.

The charges included the "farming out" of negligence cases — in which respondent had been retained on a contingent fee basis — under arrangements whereby respondent obtained loans or advances on his 50% share of the fees, without regard to the services or responsibility of the respondent in the cases (Charge No. 1); conversion of a client's funds (Charge No. 2); failure to remit within 15 days, as required by special rule IV of part 4 (subd. [4], par. [a]) of the Rules of the Supreme Court, Appellate Division, First Department, settlement funds to personal injury claimants (Charge No. 3); compromise of infant claims without court order (Charge No. 4); failure to file statements of retainer (Charge No. 5); failure to file closing statements (Charge No. 6); failure to maintain a special account for the deposit of settlement funds (Charge No. 7); harboring a disbarred lawyer in respondent's law office (Charge No. 8); and failure to uphold the honor and dignity of the profession by the use of profanity and the addressing of a racial epithet to a witness at the close of a matrimonial action after the Presiding Justice had left the courtroom (Charge No. 9).

Although respondent had been examined under oath at the inception of the investigation by the Co-ordinating Committee on Discipline, respondent did not testify on his own behalf at the hearings before the Referee. In *Matter of Wysell* (10 A D 2d 199, 202) this court alluded to the consequences of the failure of an attorney to testify in a disciplinary proceeding in the following language: "Disciplinary proceedings are not criminal proceedings, and the 'refusal to testify raises the legal presumption of the truth of these facts, which must have been known to defendant, and which he failed to contradict.' (*Matter of Association of the Bar of the City of N. Y.* v. *Randel,* 158 N. Y. 216, 219.) For '[i]f there was any possible statement that the defendant could have made, calculated to explain his conduct and relieve himself from the serious consequences of the facts as disclosed by this record, he should have taken the stand, made a full statement and submitted himself to cross-examination.' (*Matter of Association of the Bar of the City of N. Y.* v. *Randel, supra,* p. 221.)"

After the Referee's report was filed, respondent moved in this court to reopen the hearing so as to permit consideration of his testimony before the Co-ordinating Committee. We have denied that motion. It should be noted that respondent had objected to the introduction of that testimony when offered at the hearings before the Referee. As a consequence, only admissions against interest were introduced in evidence. But even if the entire testimony were before the Referee, that would still

not be a proper or adequate substitute for respondent's obligations to take the stand and be cross-examined as to any testimony he might give in attempted explanation of his conduct.

The testimony under Charge No. 1 revealed that respondent indulged in the practice of accepting contingent fee retainers in accident cases with the intention of forwarding those cases to other attorneys for handling under arrangements whereby respondent would obtain immediate financial benefits for himself in the form of loans or advances against his agreed share — 50% of the net fees resulting from trial or settlement of the cases by the forwardee-attorneys — with little or no service and responsibility to be rendered or assumed by respondent. During the 15-month period, July 1, 1959–September 30, 1960, respondent transferred 15 such negligence cases to one firm of attorneys; 37 cases to another firm; and 38 cases to a third attorney (34 of these cases had been retransferred from the second set of attorneys). In each instance, when respondent " farmed out " these negligence cases, he obtained loans of money from the attorneys to whom he had transferred the cases, to be repaid from respondent's share in the net fees to be realized. Moreover, the cases were transferred to new counsel without any prior notice by respondent to his clients or any inquiry by him concerning their wishes in the matter.

The Referee found that in " farming out " negligence cases, under arrangements whereby respondent was to share in 50% of the fees, respondent violated canon 34 of the Canons of Professional Ethics of the New York State Bar Association and rule V (part 4) of the special rules of this court. That canon and our rule V interdict the division of fees for legal services upon any basis other than a division of services or responsibility.

In *Greenwald* v. *Zyvith* (23 A D 2d 201) the court in discussing canon 34 said (pp. 203–204) : " This canon is designed, in part, to keep the profession of law from becoming an ordinary business. It gives substance to the admonition of canon 12 that ' the profession is a branch of the administration of justice and not a mere money-getting trade.' Canon 34 thus condemns both the ' finder's fee ', payable regardless of the service performed or responsibility assumed by a forwarding lawyer, as well as the unearned divided fee, taken by an attorney who has assumed the role of an ' attorney of record ' but who, in fact, has neither rendered service nor assumed responsibility in the handling of the case (Drinker, Legal Ethics [1953 ed.] 186)."

In *Matter of Connelly* (18 A D 2d 466, 469) this court held that lawyers are expected to adhere to the dictates of the canons " and any substantial breach thereof is considered as profes-

sional misconduct which may be the subject of disciplinary action in accordance with the provisions of said subdivision 2 of section 90 of the Judiciary Law.''

There is no question that respondent's conduct with respect to the '' farming out '' of negligence cases was in clear violation of canon 34 and our special rule V.  In addition, we strongly disapprove of such trafficking in negligence cases as if dealings were being had in commodities in ordinary business.  Nor will this court condone transactions which in effect constitute the pledging of contingent fees in negligence cases as security for the payment of loans or advances.  Respondent's conduct with respect to the '' farming out '' of the negligence cases constituted serious professional misconduct.

It serves no purpose to discuss in detail the evidence upon which the other charges were clearly sustained.  Conversion of a client's funds is serious misconduct (*Matter of O'Doherty,* 14 A D 2d 4, affd. 11 N Y 2d 1028), even where the amount may be comparatively small (*Matter of Longo,* 274 App. Div. 14). Failure to comply with the special rules of this court governing the conduct of attorneys as to filing statements of retainer, closing statements and timely remission of settlement funds to clients constitutes professional misconduct.  (*Matter of Kiley,* 22 A D 2d 527, 528.)  Respondent's association with, and employment of, the disbarred attorney, Sohmer, in respondent's law office is the type of conduct which received condemnation by this court in *Matter of Lerner,* 270 App. Div. 602, 603.

With respect to Charge No. 4, involving the compromise of infants' claims without court order, this court has ruled that the failure to obtain judicial approval of infants' settlements is grievous misconduct.  (*Matter of Feldman,* 17 A D 2d 553, 558.) The Referee concluded that since the accident, in which the infants mentioned in the Charge were injured, occurred in New Jersey and the case was settled with a New Jersey Casualty Company, respondent could be excused from following the procedure for settling infants' claims provided for in our special rule VI.  There is nothing in that rule, nor in CPLR 1207, 1208, which restricts its application to New York accidents.  Since no action was commenced in New Jersey, the settlement of the claims in New York involving New York infants required that the compromise be approved by a court.  Respondent was not permitted to rely on the carrier's practice to omit obtaining a compromise order (*Matter of Feldman, supra,* p. 557).  Nor did the fact that the accident occurred in New Jersey excuse the failure by respondent to file statements of retainer and closing statements with respect to the claims of these infants.

The evidence before the Referee, and the findings which we confirm, demonstrate, in their cumulative effect, serious professional misconduct on the part of respondent. What is more, respondent did not testify and attempt to explain his conduct or show why he should be relieved from the grave consequences which might flow from the facts demonstrated by the record.

In determining the measure of disciplinary sanction to be meted out, we have, of necessity, considered respondent's past disciplinary record. Respondent was admitted to the Bar by the Appellate Division, Second Department, on May 7, 1924. In January, 1928, respondent was disbarred by the Second Department, after he had pleaded guilty to a felony count in an indictment in the United States District Court for the Eastern District of New York charging him with using the mails to defraud casualty companies into paying money to fraudulent claimants for alleged personal injuries (*Matter of Kaye,* 222 App. Div. 829). In June, 1935, respondent was reinstated by the Second Department, after he had received a Presidential pardon. (*Matter of Kaye,* 243 App. Div. 615.)

In April, 1953, this court suspended respondent from practice for one year on a charge of knowingly issuing bad checks (*Matter of Kaye,* 281 App. Div. 508, 509). Our *Per Curiam* in that case noted that: " Respondent has previously been admonished with respect to his conduct and professional associations. He appears not to have taken the admonition sufficiently seriously." Respondent was reinstated by this court on September 1, 1954.

Despite these prior difficulties, respondent has evidently continued to violate the rules of correct professional conduct in grave respects. His conduct strongly suggests the likelihood that he will continue to bring the profession into disrepute. Under the circumstances, the respondent should be disbarred.

BREITEL, J. P., VALENTE, McNALLY, EAGER and STEUER, JJ., concur.

Respondent disbarred, effective February 14, 1966.